27637. AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *et al.* v. HARRIS.

320 

DECIDED SEPTEMBER 20, 1939. REHEARING DENIED DECEMBER 14, 1939.

*Neely, Marshall & Greene,* for plaintiffs in error.

*Thomas A. Jacobs Jr.,* contra.

GUERRY, J. Bennie Harris was injured while in the performance of his duties. He filed a claim for compensation against Burns Brick Company, American Mutual Liability Insurance Company being the insurance carrier. After a hearing before a single commissioner compensation was denied the claimant on the ground that the claimant was not an employee of Burns Brick Company, but was employed and paid by A. C. Anglin who drove one of the trucks belonging to Burns Brick Company and used by it in delivering brick to its customers. This finding was approved by the full board. The evidence showed that the claimant was selected and hired by Anglin and paid by Anglin, and it does not appear that Burns Brick Company had ever given any orders to him relative to his work. The case was appealed to the superior court on the ground that the evidence demanded a finding that Harris was an employee of Burns Brick Company, and therefore entitled to compensation. The superior court judge reversed the finding of the Industrial Board and returned the claim to the board with direction that the award be made in favor of the claimant, the amount to be fixed by the board. To this order the insurer excepted.

The undisputed facts are these: Burns Brick Company manufactures brick at Macon, Georgia, and, to facilitate the sale of the same, they deliver the brick in company-owned trucks to points in the State of Georgia. When they first began this delivery system they employed two drivers for each truck to work on an hourly basis. After this arrangement had been worked for a short while the same was changed so as to have the drivers work on a mileage basis, with each driver to drive his share, and the salary to be split between them. The drivers became dissatisfied with this plan and went to see Mr. Burns, an official of the company, and reached an agreement whereby "he told us that he would use one driver to the truck, and we could pay our own helpers," and the drivers themselves would be paid the same amount of money on a mileage

basis, which was at the rate of fifty cents per thousand brick for seventy miles. Under this arrangement there was but one driver to a truck, and he was to be paid the full amount to be earned under the mileage basis above stated, and the driver was to employ and pay his own helper, it being understood that the helper was not to be allowed to drive the truck. It was necessary that the driver have a helper in unloading the brick at the destination. Under this arrangement Anglin continued in the employ of Burns Brick Company as a driver of one of its trucks, and Anglin employed the claimant, Harris, and paid him $4 per week for his services. Harris was under the immediate direction and control of Anglin. This arrangement had continued for some time and Burns Brick Company had knowledge of the fact that Harris was working on its truck as a helper to its driver, Anglin. On May 5, while returning from one of its deliveries of brick, the truck ran against a tree and injured the claimant. Burns Brick Company had full authority to direct the time, manner, and details of the work done by Anglin in driving its truck, just as it did as to any other employee working for it.

Plaintiff in error insists that this court, in *Sinclair Refining Co. v. Veal,* 51 *Ga. App.* 755 (181 S. E. 705), has decided the principle governing the facts in this case, which was followed by the finding of the Industrial Board, and we quote these extracts from the opinion: "A principal may consent to the employment by his agent of a subagent to perform the duties of the agent for the principal, and the subagent in so doing may be only the representative of his immediate employer, and stand not in the relationship of agent to the principal of such employer." This opinion (page 758) quoted approvingly as follows: "Professor Mechem in his work on Agency (2d ed.), 240, points this out in the following language: 'The principal may, of course, authorize the employment of the subagent on his account and as his agent, and thus create privity of contract between them. But he may also do less. He may occupy a middle ground. He may clearly be willing to consent that his agent may perform the duty through a substitute employed at the agent's risk and expense, *when he would not be willing, at his own risk and expense* to have such a substitute employed.'" (Italics ours.) It will be noted in the *Veal* case that the refining company had appointed an agent in a named locality to sell and deliver its products,

the agent to furnish at his own expense necessary teams, trucks, motive power, drivers, etc., in selling and making such deliveries and collections, and the agent in that case had expressly agreed to save the refining company harmless from any and all damage caused by the agent's employees. It clearly appears that the facts being dealt with in that case showed that the agent, so called, was an independent. contractor, and, as such, his employees were not the employees of the refining company.

This same rule is differently stated in *Bentley* v. *Jones,* 48 *Ga. App.* 587, 589 (173 S. E. 737): "Where one 'contracts with an individual exercising an *independent employment,* for him to do a. work not in itself unlawful or attended with danger to others, such work to be done according to the contractor's own methods and not subject to the employer's control or orders except as to results to be obtained, the employer is not liable for the wrongful or negligent acts of such independent contractor or his servants.'" (Italics ours.) This rule is applicable under the provisions of the workmen's compensation act. *Zurich General Accident &c. Co.* v. *Lee,* 36 *Ga. App.* 248 (136 S. E. 173). Under the facts of the present case it does not appear that Anglin was an independent contractor. *Yearwood* v. *Peabody,* 45 *Ga. App.* 451 (2) (164 S. E. 901), lays down a rule for the determination of this relationship under the facts of this case as follows: "Under the Georgia statute and decisions, the test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." See also *Bentley* v. *Jones,* supra.

The undisputed evidence in this case was that Anglin was an employee of Burns Brick Company. The fact that he was paid on a mileage basis rather than on a fixed wage or salary does not alter this status. Relative to this question it was said in *Swift & Co.* v. *Alston,* 48 *Ga. App.* 649, 650, (173 S. E. 741): "It is true that courts have in some cases treated the mode of payment as a circumstance to be considered in determining the character of the relation, but in so far as our diligence has found, that is by no

means decisive of this question, nor is it in any way inconsistent with the idea of that relation being one of master and servant." Burns Brick Company owned the trucks, and all the work of hauling was done under its supervision and direction; and the number of brick, the time of delivery, and every detail as to the manner, method, and time of executing the delivery of the brick was under the direct control and direction of the employer. The evidence shows without dispute that under the terms of hiring it was contemplated that the driver of the truck could not perform all the duties required of him without a helper. The driver was the servant and agent of the employer. The very nature of the contract and the rate of pay contemplated that this agent was empowered to employ a subagent.

The facts in this case are strikingly similar to those in *Swift & Co.* v. *Alston,* supra. In this case the facts are undisputed. The only question is: did they *demand* a finding that Harris was an employee of Burns Brick Company or did they authorize a finding that he was not such an employee? In *Swift & Co.* v. *Alston,* this court held that the evidence *authorized* a finding that Oliver, the employer of the claimant, was not an independent contractor. In this case they *demand* a finding that Anglin was not an independent contractor delivering brick for Burns Brick Company. The commissioner in his finding seems to have based it entirely upon the fact that the claimant himself testified that he was employed by Anglin, paid by Anglin, and worked under Anglin's direction, and was never given any order by Burns Brick Company. All this is true, but when taken in connection with the undisputed facts that Anglin was not an independent contractor, that by the very terms of his employment a helper was necessary in the proper performance of the task assigned him, and that he was expected to hire and use such employee, such employee by these very facts himself became an employee of Burns Brick Company; and they had the right, whether they assumed to exercise it or not, of directing the manner, time, and method of performing the work. This court, in *Hockmuth* v. *Perkins,* 55 *Ga. App.* 649 (191 S. E. 156), in another case almost identical in facts has decided the same principle. It was there quoted from *Cooper* v. *Lowery,* 4 *Ga. App.* 120 (60 S. E. 1015), as follows: "If a servant who is employed to do certain work for his master employs another person to assist him, the master is liable

324

for the negligence of the assistant only when the servant had authority, express or implied, to employ him, or when the act of employment is ratified by the master."

The evidence in this case demanded a finding that the contract between Burns Brick Company and Anglin contemplated that Anglin was to employ a helper to assist him in performing his duties. The fact that Burns Brick Company did not itself undertake to direct the helper proves nothing where the undisputed facts show that it vested the authority to so direct in an employee. The right to hire and fire and direct the work may be vested in a foreman or superintendent, but the workers are employees of the master, nevertheless. The evidence further shows that Burns Brick Company had full knowledge of the fact that the claimant was assisting Anglin in the performance of those duties, and that he was injured while he was engaged in that work. The evidence demanded such a finding, and the trial court was correct in so directing, and in returning the case to the Industrial Board for it to determine the amount of the award.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*